UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARTHA I. RHODES, | No. ED CV 14-1667-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 12, 2014, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on August 22, 2014, and August 28, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 9, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 22, 1968. [Administrative Record ("AR") at 22, 137.] She has past relevant work experience as a bartender, cashier, and heavy equipment operator. [AR at 22, 45.]

On November 14, 2011, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since November 10, 2010. [AR at 9, 135-36, 137.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 9, 92-93.] A hearing was held on February 28, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 9, 29-48.] A medical expert ("ME") and a vocational expert ("VE") also testified. [AR at 32-37, 43-44, 45-47.] On March 13, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from November 10, 2010, the alleged onset date, through March 13, 2013, the date of the decision. [AR at 9-24.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5.] When the Appeals Council denied plaintiff's request for review on May 21, 2014 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 10, 2010, the alleged onset date.[1] [AR at 11.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [D]egenerative disc disease of the lumbar and cervical spine status post fusion surgery, history of migraines and left shoulder impingement syndrome with radiculopathy status post left shoulder surgery.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 13.]

---

[1] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 11.]

4

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] except:

> [T]he claimant can stand or walk for two hours out of an eight-hour workday; the claimant can sit for six hours out of an eight-hour workday; the claimant can lift and/or carry ten pounds occasionally, less than ten pounds frequently; the claimant can occasionally push or pull with the lower extremities; the claimant can occasionally push or pull with the left upper extremity; the claimant can occasionally bend, kneel, stoop, crouch or climbing [sic] using ramps and stairs; the claimant cannot squat, crawl or climb using ladders, ropes or scaffolds; the claimant cannot perform work around heights and vibration; the claimant can occasionally work around moving machinery; the claimant does not have any limitations with regard to handling or fingering with the left upper extremity.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a bartender, cashier, and heavy equipment operator. [AR at 22, 45-46.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "information clerk" (Dictionary of Occupational Titles ("DOT") No. 237.367-046), "charge account clerk" (DOT No. 205.367-014), and "bench assembler" (DOT No. 734.687-018). [AR at 23-24, 45-47.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of November 10, 2010, through March 13, 2013, the date of the decision. [AR at 32.]

/

/

/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) considered the opinion of plaintiff's treating physician, Andrew Hesseltine, M.D.; (2) assessed plaintiff's RFC; and (3) failed to pose a complete hypothetical to the VE. [Joint Stipulation ("JS") at 6.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.   DISCUSSION**

The ME, Dr. Lorber, reviewed all of the exhibits of record prior to the hearing, and had the opportunity to question plaintiff at the hearing. [AR at 20, 32-37, 43-44.] Dr. Lorber ultimately concluded that plaintiff's left upper extremity impairment was "severe" and warranted limitations in pushing, pulling, overhead activities, and reaching, as well as with handling and fingering. [AR at 34-37.] At the hearing, Dr. Lorber testified as follows:

> Regarding listing 1.02B, left shoulder, the claimant underwent an MRI of her left shoulder on 19 August '11, which revealed a mild rotator cuff tendinopathy but more importantly, a SLAP lesion involving the labrum. On 23 December '11, the claimant underwent surgery to her left [shoulder] for the SLAP lesion. . . . Claimant does not meet or equal listing 1.02B as there's involvement in only one upper extremity and in order to meet the listing, you have to have involvement in both upper extremities. But she does have a *severe impairment involving her left upper extremity, which will also reduce her [RFC]. . . . She may occasionally use her left upper extremity for pushing, pulling, overhead activities, and reaching. Handling and fine fingering can be done on a frequent basis with the left upper extremity.* There are no restrictions regarding the use of the right upper extremity.

[AR at 35-37 (emphasis added) (citation omitted).]

The ALJ reviewed Dr. Lorber's testimony as follows:

> Dr. Lorber indicated that diagnostic imaging of the claimant's spine, along with the claimant's treatment records do not provide evidence of focal neurologic deficit required by Listing 1.04(A). He testified he did not agree with the opinion of the claimant's physician, Dr. Hesseltine. Dr. Lorber reported the claimant had a severe impairment in the cervical and lumbar spine, however, she did not rise to a listing level. He indicated the claimant's medical records revealed a *severe* left upper extremity impairment. Dr. Lorber reported the claimant had a history of migraines treated with medication. He testified the claimant's objective records did not support a finding that the claimant required spine fusion surgery as noted by the claimant's physician.

6

> He opined the impairments neither singly nor in combination met or equaled a medical listing.  He indicated in his opinion the claimant could lift and/or carry ten pounds occasionally, less than ten pounds frequently, could stand or walk for two hours out of an eight-hour day, could sit for six hours out of an eight-hour workday, could occasionally bend, stoop, crouch, kneel or climb using ramps and stairs, could not crawl or climb using ladders, ropes or scaffolds, could occasionally operate foot pedals, could not work at unprotected heights, could occasionally work around machinery, had to avoid concentrated exposure to vibration, *could occasionally use her left upper extremity for pushing, pulling, overhead activities and reaching* and *could frequently perform handling and fingering with the left upper extremity*.

[AR at 20-21 (emphasis added) (citation omitted).] The ALJ then discussed the weight given to Dr. Lorber's testimony and findings:

> The undersigned finds the testimony of Dr. Lorber was highly credible because it was reasonable and consistent with the evidence as a whole.  His opinion is consistent with the claimant's medical records as [a] whole which reveal improved symptoms after surgery and physical therapy treatment and several normal physical examinations.  The undersigned has generously considered the claimant's severe back and shoulder impairments and has included a less than full range of sedentary work as part of the claimant's residual functional capacity, including no stooping or crawling, no more than two hours of standing or walking in an eight-hour workday and no more than six hours of sitting in an eight-hour workday.[4]

[AR at 21.]

Plaintiff contends that although the ALJ found the testimony of Dr. Lorber to be "highly credible" because it was "reasonable and consistent with the evidence as a whole," the ALJ nevertheless failed to properly consider plaintiff's RFC because the ALJ failed to take into account some of Dr. Lorber's limitations -- specifically, Dr. Lorber's limitations to only occasional use of the left upper extremity for overhead activities, and reaching, and to frequent handling and fingering with the left upper extremity.  [JS at 17-18.]

Defendant argues that because the ALJ properly rejected the opinions of plaintiff's treating physician Dr. Hesseltine, whose opinions also included limitations on reaching, handling, fingering, pushing, and pulling, the same analysis and reasoning would apply to the ALJ's unstated reasons for not including Dr. Lorber's left upper extremity limitations in the RFC.  [JS at 21.]  For the following reasons, the Court does not agree.

---

[4] As is also true of the RFC, the examples provided by the ALJ, i.e., no stooping or crawling, and standing, walking and sitting limitations, do not appear to reflect the ALJ's purportedly "generous" consideration of plaintiff's severe shoulder impairments.  [AR at 21.]

7

First, unlike Dr. Lorber, Dr. Hesseltine did not in any way quantify the extent of plaintiff's left upper extremity physical functional limitations. [See AR at 585.] Thus, in the "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)" form completed by Dr. Hesseltine, he simply responded "Yes" in response to a question asking whether plaintiff's ability to reach (including overhead), finger, feel, and push/pull, were affected by her impairment. [Id.] He indicated that "these physical functions [were] affected" because "[i]ncrease[d] ambulation worsens [plaintiff's] lumbar spine pain." [Id.] Dr. Hesseltine did not indicate whether plaintiff would be limited to frequent, occasional, or no activity with respect to reaching, handling, fingering, feeling, and pushing/pulling. As a result, the degree to which Dr. Hesseltine's findings are consistent with Dr. Lorber's findings is unclear. [Id.]

Moreover, the ALJ gave "little weight" to Dr. Hesseltine's opinion because it was brief, conclusory, and inadequately supported by clinical findings, as well as inconsistent with the "objective medical evidence as a whole already discussed above in this decision, which revealed mild objective findings with diagnostic imaging of the left upper extremity . . . ." [AR at 22.] In contrast, the ALJ found Dr. Lorber to be "highly credible" for exactly the opposite reason -- Dr. Lorber's opinion was deemed to be consistent with the medical records as a whole -- yet Dr. Lorber still found severe left upper extremity impairment. [AR at 21.] Accordingly, defendant's suggestion that the same reasons for rejecting Dr. Hesseltine's opinions should apply to Dr. Lorber's opinions is unavailing.

Additionally, the Court is not persuaded that the ALJ properly discounted the opinion of Dr. Hesseltine at least insofar as it relates to plaintiff's left upper extremity findings. Indeed, the ALJ's specific observation in discounting Dr. Hesseltine's findings, i.e., that the record "revealed mild objective findings with diagnostic imaging of the left upper extremity" [AR at 21], fails to take into account the entire record evidence. With regard to diagnostic imaging that revealed only mild objective findings, it appears that the ALJ may be referring to a November 17, 2010, x-ray of plaintiff's left shoulder, which the ALJ noted revealed "unremarkable findings." [AR at 16 (citing AR at 417 ("Unremarkable views of the left shoulder"))]. However, even a cursory review of the ALJ's decision itself otherwise reveals that subsequent to that date there were significant and

verifiable medical issues with plaintiff's left upper extremity -- some determined by MRI results. For instance: (1) on December 10, 2010, plaintiff was diagnosed with frozen left shoulder and lumbago, and physical examination revealed abduction of the left shoulder to ninety degrees; (2) on December 16, 2010, examination showed weakness of the rotator cuff; tenderness in the paracervical muscles; radicular symptoms; fifty percent of normal range of motion of the shoulders; tenderness over the coracoacromial arch; and positive Hawkins, Neer, Jobe's, and impingement sign tests; (3) on April 10, 2011, plaintiff alleged level ten pain with lifting; physical examination revealed "very poor" scapular mechanics; and plaintiff was diagnosed with residual adhesive capsulitis of the left shoulder; (4) on June 1, 2011, physical examination revealed decreased strength in the left triceps, and decreased abduction of the shoulders; plaintiff was diagnosed with a C4-C5 disc displacement with an annular tear, and left shoulder impingement; (5) on August 19, 2011, among other things, plaintiff was diagnosed with cervical spondylosis with radicular symptoms of the left upper extremity; (6) on August 19, 2011, an MRI of the left shoulder revealed "mild distal supraspinatus and infraspinatus tendinosis, no evidence of a rotator cuff tear, a tear extending through the anterior-superior, anterior and anteroinferior labrum and mild biceps tendinosis"; (7) on September 13, 2011, plaintiff was diagnosed with left arm radiculopathy, C4-C5 disc displacement with an annular tear, and left shoulder impingement; (8) on September 15, 2011, plaintiff complained of left shoulder pain and examination revealed significant tenderness to palpation, and decreased range of motion of the shoulders; and plaintiff was diagnosed with left shoulder labral tear, left shoulder biceps anchor injury, and left myofacial shoulder pain; (9) on December 21, 2011, plaintiff alleged left shoulder pain and examination revealed *severely* restricted range of motion of the neck; and (10) on December 23, 2011, plaintiff had left shoulder surgery. [AR at 16-19 (citations omitted).]

Based on the foregoing, it appears that there was only one "diagnostic imag[e]" showing only "mild objective findings" related to plaintiff's left upper extremity -- the November 17, 2010, x-ray of plaintiff's left shoulder -- and, as Dr. Lorber found, plaintiff's medical records generally showed that plaintiff had a "*severe* left upper extremity impairment." [AR at 20 (emphasis added) (citing AR at 32-37, 43-44).] Thus, the ALJ's statement that Dr. Hesseltine's opinion regarding

1  plaintiff's left shoulder functional limitations should be discounted because the evidence of record
2  showed only "unremarkable" left shoulder findings is *not* supported by substantial evidence. The
3  record, in fact, provides substantial support for Dr. Lorber's finding of severe left upper extremity
4  limitations.

5  Next, defendant also argues that any error in not including Dr. Lorber's limitations in the
6  RFC was harmless because the occupations of information clerk and charge account clerk do not
7  "contemplate overhead work or that both hands are needed for [these jobs], which would be
8  compatible with Plaintiff's alleged limitations with her upper extremity." [JS at 21.] Defendant
9  appears to conflate Dr. Lorber's testimony regarding plaintiff's left upper extremity limitations of
10 occasional overhead activities with occasional reaching. At the hearing, Dr. Lorber testified that
11 plaintiff, "may occasionally use her left upper extremity for pushing, pulling, overhead activities,
12 *and* reaching," and that handling and fine fingering can be done on a frequent basis with the left
13 upper extremity. [AR at 37 (emphasis added).] Thus, Dr. Lorber's testimony did not reflect that
14 only plaintiff's *overhead reaching* was limited -- he testified that overhead activities were limited
15 to occasional, *and* that reaching generally, i.e., in any direction, was limited to occasional. Of the
16 three occupations the ALJ found plaintiff could perform -- even assuming as defendant suggests
17 that they do not include a significant amount of *overhead* reaching -- all involve more than
18 occasional reaching generally. For instance, the information clerk requires *frequent* reaching,
19 handling, and fingering (DOT No. 237.367-046); the charge account clerk requires *frequent*
20 reaching and handling, and occasional fingering (DOT No. 205-367-014); and the bench
21 assembler requires constant reaching, handling, and fingering (DOT No. 734.687-018). It is not
22 clear that plaintiff, who is left handed [AR at 36], would be able to perform *any* of these jobs if the
23 ALJ had included Dr. Lorber's limitation to occasional reaching in the RFC determination.[5]

24 An ALJ may not ignore or reject relevant medical evidence without giving specific, legitimate
25 reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996); Reddick, 157 F.3d

---

27  [5] The Court notes that Dr. Lorber's limitations to occasional left upper extremity reaching,
28 handling, and fingering, would appear to preclude plaintiff from performing the job of bench assembler.
DOT No. 734.687-018.

at 722-23 (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). In particular, in determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition. Robbins, 466 F.3d at 883. In this case, as discussed, while the ALJ included Dr. Lorber's limitation to occasional pushing and pulling with the left upper extremity, the ALJ failed to provide any specific and legitimate reason for ignoring or rejecting Dr. Lorber's other left upper extremity limitations to occasional overhead activities, and occasional reaching.

**B.    CONCLUSION**

The Court concludes that in light of the significant weight the ALJ otherwise gave to Dr. Lorber's opinions, the ALJ's failure to adequately state why he did not include in the RFC Dr. Lorber's relevant and material upper left extremity limitations to occasional overhead activities, and occasional reaching, was not harmless error. Remand is warranted.[6]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear

---

[6] In light of the Court's ruling and remand for further proceedings, the Court need not further determine at this time whether the ALJ properly discounted Dr. Hesseltine's opinion, or whether the ALJ provided a complete hypothetical to the VE.

11

from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ ignored relevant and material medical evidence without providing specific and legitimate reasons for doing so, the ALJ on remand shall reassess the relevant medical evidence of record including, but not limited to, plaintiff's left upper extremity impairment and resulting physical limitations, explain the weight afforded to each opinion, and provide legally adequate reasons supported by substantial evidence of record for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform in light of her RFC and other relevant factors.[7]

/
/
/
/
/
/
/
/
/
/

---

[7] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 21, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE